# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| HARRY HILBURG, MARIANNE BIGELOW, WILLIAM SIMMONS, KENNETH STEUCK, CHARLES CHRONICLE, AMANDA BERARDI, NOAH WOODCOCK, GREGORY TRAVERS, EDNA VASQUEZ, ROBERT MULLER, MARC SCHWEDELSON, MARLA KERR, and LISA FRIEDLAND, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-10970<br><br>Hon. Linda V. Parker<br><br>Magistrate Judge Curtis Ivy, Jr. |
|     Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, a Delaware Limited Liability Company, | |
|     Defendant. | |

## DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

Ford Motor Company moves the Court for an order dismissing all causes of action in plaintiffs' Amended Class Action Complaint ("ACAC") pursuant to Rules 8(a), 9(b), and 12(b)(1) and (6), of the Federal Rules of Civil Procedure.

Specifically, Ford seeks an order:

(1)   Dismissing plaintiffs Hillburg's and Simmons's claims for improper claim splitting;

(2)   Dismissing Count 1, plaintiffs' "nationwide claims" for violation of the Magnuson-Moss Warranty Act, for lack of standing;

(3)   Dismissing Counts 2–6, 9–11, 14–16, 19–21, 24–26, 29–31, 34–37, 40–43, 46–48, 50–52, and 55–57 for failure to state a claim for fraudulent concealment, fraudulent omission, or violation of their states' consumer-protection laws;

(4)   Dismissing Counts 7, 12, 17, 22, 27, 32, 38, 44, and 53 for failure to state a claim for breach of the implied warranty of merchantability; and

(5)   Dismissing Counts 8, 13, 18, 23, 28, 33, 39, 45, 49, 54, and 58 for failure to state a claim for unjust enrichment because Ford's New Vehicle Limited Warranty covers the subject matter.

This Motion is based on the accompanying Brief and exhibits, and such other written and oral argument as may be presented to the Court.

As required by Local Rule 7.1(a)(2), undersigned counsel hereby certifies that on August 26, 2025, counsel for Ford conferred with plaintiffs' counsel and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Ford respectfully requests that this Court enter an order granting this Motion to Dismiss Plaintiffs' Amended Class Action Complaint and awarding such other relief that the Court deems appropriate.

Respectfully submitted,

*/s/ Roger P. Meyers*
Stephanie A. Douglas (P70272)
Roger P. Meyers (P73255)
Susan A. McKeever (P73533)
A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone/Fax: (248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com
mckeever@bsplaw.com
morrison@bsplaw.com

Dated: August 29, 2025          *Attorneys for Ford Motor Company*

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| HARRY HILBURG, MARIANNE BIGELOW, WILLIAM SIMMONS, KENNETH STEUCK, CHARLES CHRONICLE, AMANDA BERARDI, NOAH WOODCOCK, GREGORY TRAVERS, EDNA VASQUEZ, ROBERT MULLER, MARC SCHWEDELSON, MARLA KERR, and LISA FRIEDLAND, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-10970<br><br>Hon. Linda V. Parker<br><br>Magistrate Judge Curtis Ivy, Jr. |
| Plaintiffs, | |
| v. | |
| FORD MOTOR COMPANY, a Delaware Limited Liability Company, | |
| Defendant. | |

## BRIEF IN SUPPORT OF FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

**STATEMENT OF ISSUES**

1.  Should this Court dismiss Hilburg's and Simmons's claims based on the claim-splitting doctrine, because they are asserting the same claims against Ford about the same subject matter in a different suit?

    Answer: Yes.

2.  Should this Court dismiss plaintiffs' fraud-based claims because they have not plausibly alleged pre-sale knowledge of defect?

    Answer: Yes.

3.  Should this Court dismiss most plaintiffs' fraud-based claims based on the economic-loss rule and several plaintiffs' consumer-protection claims for state-specific bars?

    Answer: Yes.

4.  Should this Court dismiss plaintiffs' implied warranty claims because their allegations do not show their vehicles are unmerchantable and most plaintiffs additionally lack privity with Ford?

    Answer: Yes.

5.  Should this Court dismiss plaintiffs' MMWA claims because they do not allege viable state-law warranty claims?

    Answer: Yes.

6.  Should this Court dismiss plaintiffs' unjust enrichment claims because Ford's New Vehicle Limited Warranty governs the subject matter?

    Answer: Yes.

7.  Should this Court dismiss or strike plaintiffs' putative "nationwide" claim, Count I, for lack of standing because they can sue only under their own states' laws?

    Answer: Yes.

ii

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

As to why Hilburg's and Simmons's claims should be dismissed for improper claim splitting:

- *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256 (6th Cir. 2019)

- *Prewett v. Weems*, 749 F.3d 454 (6th Cir. 2014)

- *Twaddle v. Diem*, 200 F. App'x 435 (6th Cir. 2006)

As to why plaintiffs' claims for fraudulent concealment and violation of various state consumer-protection laws should be dismissed because they do not adequately allege presale knowledge of the alleged defect:

- *Tapply v. Whirlpool Corp.*, __ F.4th __, 2025 WL 2237654 (6th Cir. Aug. 6, 2025)

- *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021)

- *Wozniak v. Ford Motor Co.*, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

- *Top Priority Transit, LLC v. Cape Auto Pool, Inc.*, 680 S.W.3d 536 (Mo. Ct. App. 2023)

- *Lopez v. Clarke*, 189 So. 3d 805 (Fla. Dist. Ct. App. 2015)

- *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178 (2014), *as modified on denial of reh'g* (Aug. 13, 2014)

- *Ozelkan v. Tyree Bros. Env't Servs.,* 815 N.Y.S.2d 265 (2d Dep't 2006)

- *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367 (Tenn. Ct. App. 2006)

- *Burbo v. Harley C. Douglass, Inc.,* 106 P.3d 258 (Wash. Ct. App. 2005*)*

- *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205 (Wis. 2005)

- *Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071 (D. Kan. 2004)

- *Martin v. Ohio State Univ. Found.*, 100, 742 N.E.2d 1198 (Ohio Ct. App.

2000)

- *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33 (Mich. Ct. App. 1998)

- *Waggener v. Seever Sys., Inc.*, 664 P.2d 813 (Kan. 1983)

- *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975)

As to why Steuck, Chronicle, Berardi, Woodcock, Vasquez, Hilburg, Muller, Schwedelson, Friedland, and Simmons's fraudulent omission/concealment claims are barred by the economic loss rule:

- *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125 (Tenn. 2021)

- *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115 (C.D. Cal. 2020)

- *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618 (E.D. Mo. 2016)

- *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399 (Fla. 2013)

- *Tietsworth v. Harley–Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004)

- *Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597 (Kan. Ct. App. 2011)

- *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541 (Mich. Ct. App. 1995)

- *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220 (S.D.N.Y. 2001)

As to why Woodcock, Friedland, and Kerr's class claims under their respective states' consumer protection statutes' are barred:

- Tenn. Code § 47-18-109 (a)(1)

- *Hammer v. Sam's East, Inc.,* 2013 WL 3756573 (D. Kan. July 16, 2013)

- *See In re Porsche Cars N. Am., Inc.,* 880 F. Supp. 2d 801 (S.D. Ohio 2012)

- *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301 (Tenn. 2008)

As to why Vasquez's claim under the Michigan Consumer Protection Act fails because the statute does not reach motor vehicle sales:

- *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707 (E.D. Mich. 2021)

As to why plaintiffs fail to state a claim for breach of the implied warranty of merchantability because their vehicles are merchantable:

- *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304 (6th Cir. 2016)

- *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)

- *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135 (W.D. Mo. 2021)

- *Jackson v. Eddy's LI RV Ctr., Inc.,* 845 F. Supp. 2d 523 (E.D.N.Y. 2012)

- *Am. Suzuki Motor Corp. v. Superior Court,* 44 Cal. Rptr. 2d 526 (2d Dist. 1995)

- *Taterka v. Ford Motor Co.*, 271 N.W.2d 653 (Wis. 1978)

As to why Steuck, Chronicle, Berardi, Woodcock, Muller, Schwedelson, Kerr, and Bigelow fail to state a claim for breach of implied warranty because they lack privity with Ford:

- *In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 707 F. Supp. 3d 103 (D. Mass. 2023)

- *Shamamyan v. FCA US LLC*, 2020 WL 3643481 (C.D. Cal. Apr. 1, 2020)

- *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108 (S.D. Fla. 2019)

- *Aracena v. BMW of N. Am., LLC,* 159 A.D.3d 664 (N.Y. App. Div. 2d Dep't 2018)

- *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017)

- *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607 (N.D. Ohio 2016)

- *Kelly v. Rickey*, 166 Wash. App. 1010 (2012)

- *Curl v. Volkswagen of Am., Inc.,* 871 N.E.2d 1141 (Ohio 2007)

- *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625 (Wash. 2003)

- *Koss Const. v. Caterpillar, Inc.*, 960 P.2d 255 (Kan. Ct. App. 1998)

v

- *Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*, 504 N.Y.S.2d 192 (2d Dep't 1986)

- *Pro. Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887 (Kan. 1984)

- *Baughn v. Honda Motor Co.,* 727 P.2d 655 (Wash. 1986)

- *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976)

- *Inglis v. Am. Motors Corp.*, 197 N.E.2d 921 (Ohio Ct. App. 1964), *aff'd*, 209 N.E.2d 583 (Ohio 1965)

As to why plaintiffs fail to state a claim for violation of the Magnuson-Moss Warranty Act:

- *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017)

- *Weidman v. Ford Motor Co.*, 2020 WL 674348 (E.D. Mich. Feb. 11, 2020)

As to why plaintiffs fail to state a claim for unjust enrichment:

- *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921 (E.D. Mich. 2022)

- *Scott v. Fields,* 92 A.D.3d 666 (N.Y. App. Div. 2d Dep't 2012)

- *Howard v. Turnbull,* 316 S.W.3d 431 (Mo. Ct. App. 2010)

- *Miller v. Gen. Motors, LLC,* 2018 WL 2740240 (E.D. Mich. June 7, 2018)

- *Le v. Kohl's Dep't Stores, Inc.*, 160 F. Supp. 3d 1096 (E.D. Wis. 2016)

As to why plaintiffs may not maintain nationwide class claims:

- *Fox v. Saginaw Cnty.*, 67 F.4th 284 (6th Cir. 2023)

- *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461 (E.D. Mich. 2025)

# TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES.......................... iii

TABLE OF AUTHORITIES ......................................................................ix

INTRODUCTION ....................................................................................1

BACKGROUND .....................................................................................3

    I.    Ford issues a recall after discovering manufacturing process variabilities in a small number of Samsung batteries. .........................3

    II.    Plaintiffs claim they overpaid for their vehicles. .................................5

LEGAL STANDARD................................................................................7

ARGUMENT ..........................................................................................8

    I.    Hilburg and Simmons have impermissibly split their claims. .............8

    II.    The fraud-based claims should be dismissed. .....................................10

        A.    Plaintiffs do not plausibly allege pre-sale knowledge of any defect. ..............................................................................11

        B.    Most plaintiffs' fraudulent omission/concealment claims are barred by the economic-loss rule. .....................................24

        C.    Several plaintiffs' state-law consumer protection claims fail for other reasons. ..............................................................26

    III.    The implied warranty claims fail. .....................................................27

        A.    Plaintiffs' vehicles are fit for their ordinary purpose of transportation. ...........................................................................27

        B.    Most plaintiffs lack privity with Ford.......................................30

    IV.    Plaintiffs' MMWA claims must be dismissed because their implied warranty claims fail.............................................................33

    V.    The unjust enrichment claims fail because an express contract covers the same subject matter.........................................................33

    VI.    Plaintiffs lack standing to pursue claims for a "nationwide" class. .................................................................................................34

viii

CONCLUSION ............................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Am. Suzuki Motor Corp. v. Superior Court,*
  44 Cal. Rptr. 2d 526 (2d Dist. 1995) ...................................................28

*Aracena v. BMW of N. Am., LLC,*
  159 A.D.3d 664 (N.Y. App. Div. 2018) ...........................................30

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................7, 18

*Aug. v. U.S. Bancorp,*
  190 P.3d 86, 96 (Wash. Ct. App. 2008), *as amended* (Sept. 4, 2008)................15

*Baughn v. Honda Motor Co.,*
  727 P.2d 655 (Wash. 1986) ......................................................30

*Beck v. FCA US LLC,*
  273 F. Supp. 3d 735 (E.D. Mich. 2017) ............................... 28, 29, 33

*Burbo v. Harley C. Douglass, Inc.,*
  106 P.3d 258 (Wash. Ct. App. 2005)......................................... 11, 12

*Curl v. Volkswagen of Am., Inc.,*
  871 N.E.2d 1141 (Ohio 2007) ...................................................30

*Curtis v. Citibank, N.A.,*
  226 F.3d 133 (2d Cir. 2000) .......................................................9

*Dack v. Volkswagen Grp. of Am.,*
  565 F. Supp. 3d 1135 (W.D. Mo. 2021).........................................28

*David v. Davenport,*
  656 So. 2d 952 (Fla. 3d DCA 1995)..............................................15

*Davis v. HSBC Bank Nevada, N.A.,*
  691 F.3d 1152 (9th Cir. 2012) ....................................................15

*DBD Kazoo LLC v. W. Michigan LLC,*
  No. 361299, 2024 WL 500208 (Mich. Ct. App. Feb. 8, 2024),
  *appeal denied*, 16 N.W.3d 730 (Mich. 2025)....................................15

*Digicorp, Inc. v. Ameritech Corp.*,
  662 N.W.2d 652 (Wis. 2003)......................................................................26

*Ellis v. Gallatin Steel Co.*,
  390 F.3d 461 (6th Cir. 2004) .......................................................................8

*Est. of Morris v. Morris*,
  329 S.W.3d 779 (Tenn. Ct. App. 2009)........................................................15

*Fox v. Saginaw Cnty.*,
  67 F.4th 284 (6th Cir. 2023) .......................................................................34

*Gant v. Ford Motor Co.*,
  517 F. Supp. 3d 707 (E.D. Mich. 2021) .......................................................27

*Greer v. Strange Honey Farm, LLC*,
  114 F.4th 605 (6th Cir. 2024) ......................................................................7

*Hall v. Gen. Motors, LLC*,
  2020 WL 1285636 (E.D. Mich. Mar. 18, 2020)..............................................33

*Hammer v. Sam's East, Inc.*,
   2013 WL 3756573 (D. Kan. July 16, 2013) ..................................................27

*Hoffman v. 162 N. Wolfe LLC*,
  228 Cal. App. 4th 1178 (2014),
  *as modified on denial of reh'g* (Aug. 13, 2014) ...........................................11

*Hole v. Gen. Motors Corp.*,
  442 N.Y.S.2d 638 (3d Dept. 1981).............................................................32

*Hope v. Nissan N. Am., Inc.*,
  353 S.W.3d 68 (Mo. Ct. App. 2011) ...........................................................29

*Howard v. Turnbull*,
  316 S.W.3d 431 (Mo. Ct. App. 2010) .........................................................34

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,
  532 N.W.2d 541 (Mich. Ct. App. 1995).......................................................25

*In re Chevrolet Bolt EV Battery Litig.*,
  No. 20-cv-13256, ECF No. 1 (E.D. Mich. Dec. 11, 2020).................... 15, 20, 33

*In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    707 F. Supp. 3d 103 (D. Mass. 2023)...................................................................32

*In re Gen. Motors Air Conditioning Marketing & Sales Practices Litig.*,
    406 F. Supp. 3d 618 (E.D. Mich. 2019) ...........................................................34

*In re Marriage of Wilson*,
    223 P.3d 815 (Kan. Ct. App. 2010) ..................................................................15

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) .............................................................27

*Inglis v. Am. Motors Corp.*,
    197 N.E.2d 921 (Ohio Ct. App. 1964),
    *aff'd*, 3 Ohio St. 2d 132, 209 N.E.2d 583 (1965) .............................................33

*Ingram v. Cendant Mobility Fin. Corp.*,
    215 S.W.3d 367 (Tenn. Ct. App. 2006)..............................................................11

*Jackson v. Eddy's LI RV Ctr., Inc.*,
    845 F. Supp. 2d 523 (E.D.N.Y. 2012) ...............................................................28

*Jimenez v. Ford Motor Credit Co.*,
    2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015)...........................................27

*Kaloti Enters., Inc. v. Kellogg Sales Co.*,
    699 N.W.2d 205 (Wis. 2005)...................................................................... 11, 15

*Katz v. Gerardi*,
    655 F.3d 1212 (10th Cir. 2011) ......................................................................8, 9

*Kelly v. Rickey*,
    166 Wash. App. 1010 (2012)..............................................................................32

*Kestrel Holdings I, L.L.C. v. Learjet Inc.*,
    316 F. Supp. 2d 1071 (D. Kan. 2004)................................................................11

*Koss Const. v. Caterpillar, Inc.*,
    960 P.2d 255 (Kan. Ct. App. 1998) ...................................................................32

*Le v. Kohl's Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096 (E.D. Wis. 2016) ............................................................34

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...................................................31

*Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*,
   504 N.Y.S.2d 192 (2d Dept. 1986) .......................................................31

*Lopez v. Clarke*,
   189 So. 3d 805 (Fla. Dist. Ct. App. 2015) ............................................11

*Louisburg Bldg. & Dev. Co. v. Albright*,
   252 P.3d 597 (Kan. Ct. App. 2011) ......................................................25

*M&D, Inc. v. W.B. McConkey*,
   585 N.W.2d 33 (Mich. Ct. App. 1998) .................................................11

*Martin v. Ohio State Univ. Found.*,
   742 N.E.2d 1198 (Ohio Ct. App. 2000) ................................................11

*Milan Supply Chain Sols., Inc. v. Navistar, Inc.*,
   627 S.W.3d 125 (Tenn. 2021) ..............................................................26

*Miller v. Gen. Motors, LLC,*
   2018 WL 2740240 (E.D. Mich. June 7, 2018) .....................................34

*Miller v. Gen. Motors, LLC,*
   773 F. Supp. 3d 461 (E.D. Mich. 2025) ...............................................35

*Miller v. South,*
   174 N.E.2d 140 (Ohio Ct. App. 1960) ..................................................15

*Missouri v. Prudential Health Care Plan, Inc.*
    259 F.3d 949 (8th Cir. 2001) .................................................................9

*Montgomery v. Kraft Foods Glob., Inc.*,
   822 F.3d 304 (6th Cir. 2016) ......................................................... 28, 29

*Mosqueda v. Am. Honda Motor Co.*,
   443 F. Supp. 3d 1115 (C.D. Cal. 2020) ...............................................25

*Nestle Purina Petcare Co. v. Blue Buffalo Co..*,
   181 F. Supp. 3d 618 (E.D. Mo. 2016) ..................................................25

*Norman v. FCA US, LLC*,
   696 F. Supp. 3d 359 (E.D. Mich. 2023) ....................................... 19, 29, 34

*Orlando v. Novurania of Am., Inc.*,
162 F. Supp. 2d 220 (S.D.N.Y. 2001) ...............................................................25

*Ozelkan v. Tyree Bros. Env't Servs.*,
815 N.Y.S.2d 265 (2d Dep't 2006).....................................................................11

*Pacella v. RSA Consultants, Inc.*,
83 N.Y.S.3d 630 (2d Dep't 2018).......................................................................15

*Padilla v. Porsche Cars N. Am., Inc.*,
391 F. Supp. 3d 1108 (S.D. Fla. 2019) ..............................................................30

*Prewett v. Weems*,
749 F.3d 454 (6th Cir. 2014) ...............................................................................8

*Pro. Lens Plan, Inc. v. Polaris Leasing Corp.*,
675 P.2d 887 (Kan. 1984).................................................................................30

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ...............................................................................7

*Richards v. ABN AMRO Mortg. Grp., Inc.*,
261 S.W.3d 603 (Mo. Ct. App. 2008) ...............................................................15

*Rife v. Newell Brands, Inc.*,
632 F. Supp. 3d 1276 (S.D. Fla. 2022)..............................................................32

*Scott v. Fields,*
92 A.D.3d 666 (N.Y. App. Div. 2d Dept. 2012) ...............................................33

*Shamamyan v. FCA US LLC*,
2020 WL 3643481 (C.D. Cal. Apr. 1, 2020) .....................................................30

*Slaney v. Westwood Auto, Inc.,*
322 N.E.2d 768 (Mass. 1975)............................................................................11

*Smith v. Gen. Motors LLC*,
988 F.3d 873 (6th Cir. 2021) ................................................................. 11, 23, 24

*Tapply v. Whirlpool Corp.*
__ F.4th __, 2025 WL 2237654 (6th Cir. Aug. 6, 2025)........................ 7, 11, 19

*Taterka v. Ford Motor Co.*,
271 N.W.2d 653 (Wis. 1978)..............................................................................28

xiii

*Tex Enters., Inc. v. Brockway Standard, Inc.*,
   66 P.3d 625 (Wash. 2003) ...............................................................31

*Tiara Condo. Ass'n v. Marsh & McLennan Co.*,
   110 So. 3d 399 (Fla. 2013) ...............................................................25

*Tietsworth v. Harley–Davidson, Inc.*,
   677 N.W.2d 233 (Wis. 2004).............................................................25

*Top Priority Transit, LLC v. Cape Auto Pool, Inc.*,
   680 S.W.3d 536 (Mo. Ct. App. 2023) ...............................................11

*Traxler v. PPG Indus., Inc.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016) ........................................ 31, 32

*Twaddle v. Diem*,
   200 F. App'x 435 (6th Cir. 2006) .......................................................9

*Urb. Dev., Inc. v. Evergreen Bldg. Prods., LLC*,
   59 P.3d 112 (Wash. Ct. App. 2002), *as amended* (Jan. 17, 2003) ....................32

*Waad v. Farmers Ins. Exch.*,
   762 F. App'x 256 (6th Cir. 2019) ....................................................8, 9

*Waggener v. Seever Sys., Inc.*,
   664 P.2d 813 (Kan. 1983)..................................................................12

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
   249 S.W.3d 301 (Tenn. 2008) ...........................................................27

Weidman v. Ford Motor Co.,
   No. 18-cv-12719, 2020 WL 674348 (E.D. Mich. Feb. 11, 2020) ......................33

*West v. Caterpillar Tractor Co.*,
   336 So. 2d 80 (Fla. 1976) .................................................................32

*Wilkins v. Jakeway*,
   183 F.3d 528 (6th Cir. 1999) ..............................................................9

*William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*,
   677 F. App'x 979 (6th Cir. 2017) ........................................................7

Wozniak v. Ford Motor Co.,
   2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ....................................11

xiv

*Xu v. Porsche Cars N. Am., Inc.*,
655 F. Supp. 3d 1214 (N.D. Ga. 2023)....................................................... 22, 23

**STATUTES**

Cal. Civ. Code § 1791.1 ..................................................................................28

Fla. Stat. § 672.314 .......................................................................................28

Kan. Stat. § 84-2-314 ....................................................................................28

Kan. Stat. §§ 50-634 .....................................................................................27

Mass. Gen. Laws ch. 106, § 2–314 ...............................................................28

MCL § 440.2314 ............................................................................................28

N.Y. U.C.C. Law § 2-314 ..............................................................................28

Ohio Rev. Code § 1302.27 .............................................................................28

Ohio Rev. Code § 1345.09 .............................................................................27

Tenn. Code § 47-18-109 ................................................................................27

W. Va. Code § 46-2-314 ................................................................................28

**RULES**

FRCP 12 ........................................................................................................7, 35

## INTRODUCTION

Plaintiffs purchased new and used 2022-2023 Ford Escape and 2021-2023 Lincoln Corsair Grand Touring plug-in hybrid electric vehicles ("PHEV"). Long after their respective purchases, Ford began an investigation and found that a small number (about 1%) of the subject vehicle population may have batteries with manufacturing defects that, when present, could cause sudden battery failure and, in one instance, had progressed to a vehicle fire. To address this concern, Ford has provided all owners of the affected vehicles a free repair under which it updates the vehicles' software to detect the potential anomaly and, if detected, replaces the vehicle's battery free of charge. All plaintiffs have received or are in the process of receiving this recall remedy.

Two of these plaintiffs, Harry Hilburg and William Simmons, are already suing Ford in another putative class action where they claim fraud, breach of warranty, and overpayment based on a different alleged defect in the same vehicles *See Pacheco et al. v. Ford Motor Co.,* No. 2:22-cv-11927. This claim splitting is improper and warrants immediate dismissal for those two plaintiffs.

Beyond this, all of plaintiffs' claims are subject to other dispositive flaws. Their fraud claims are entirely implausible. Boiled down, those claims posit that Ford designed and sold "plug-in" vehicles despite knowing, prior to sale, that it was purchasing and installing tens of thousands of expensive Samsung lithium-ion

1

batteries that had manufacturing defects and would require a recall. This is nonsensical. Meanwhile, their implied warranty claims seek to hold Ford liable for breach—despite that Ford initiated a recall months before this action was filed, promptly developed and deployed a remedy that plaintiffs have received, and the only genuine injury they have alleged is a temporary inability to plug in the vehicles. Plaintiffs' other claims likewise fail for other reasons.

At bottom, this case stands on two faulty premises: 1) a logical fallacy that the occurrence of an event that can be "reduced" and "mitigated"—but not eliminated— proves advance knowledge, thus fraud; and 2) an unripe prediction that Ford's software update to its own, unique battery engine control module will be ineffective because other manufacturers' different software updates to their own different control modules allegedly have been ineffective. None of this supports the claims asserted here. Ironically, plaintiffs—who claim an environmental injury by being forced to "increas[e] their carbon footprint"—simultaneously insist that what Ford should do is scrap 20,500 batteries for a 1% defect rate based on nothing but their lay assertion that a software detection process will inevitably fail.

Ford recognizes that a temporary interruption in being able to plug in these PHEV vehicles is a disappointment and inconvenience, and may have resulted in a few months' increased gasoline costs for some purchasers. But Ford has addressed that issue, not just under warranty but also via the recall process. The facts plaintiffs

2

pled here show compliance with Ford's obligations, not liability. Plaintiffs' claims should be dismissed.[1]

## BACKGROUND

### I.  Ford issues a recall after discovering manufacturing process variabilities in a small number of Samsung batteries.

This action arises from a recall based on a sporadic defect in certain lithium-ion batteries manufactured by Samsung between July 1, 2019, and March 28, 2023. Am. Class Action Compl. ("ACAC"), ECF No. 13 at ¶ 79, PageID.701. Ford purchased those batteries and installed them in model year 2020-2024 Ford Escape and 2021-2024 Lincoln Corsair PHEVs. ECF No. 13-11, PageID.1257–59.

On September 4, 2024, Ford's Critical Concern Review Group (CCRG) opened an investigation into three field reports of incidents of "battery thermal venting" that occurred in PHEV vehicles between April and August 2024. *See id.*, PageID.1259. Ford's investigation revealed that, in some Escapes and Corsairs, the "high voltage cell's separator layer between its cathode and anode may be susceptible to damage as a result of the cell manufacturing process." *Id.*, PageID.1258. The root cause was found to be "[v]ariability in the battery cell

---

[1]  Ford makes this motion based on the deadline to respond to the ACAC, without having received purchase agreements for all plaintiffs to determine which of those agreements contain arbitration agreements that Ford may be entitled to enforce. Ford intends to seek to compel arbitration under any such agreements it may later obtain and does not, in filing this motion in the interim, waive any such right.

3

supplier's production process" which "may result in the cell's cathode inducing micro-defects and/or local stresses in the cell's separator layer." *Id.* These micro defects and stresses "may damage the separator." *Id.* This could lead to an internal short circuit, which in turn, could result loss of motive power or battery thermal venting. *Id.; see also* ECF No. 13-24, PageID.1392.

In December 2024, Ford notified the National Highway Traffic Safety Administration (NHTSA) that it was initiating Recall No. 24V-954 based on its findings. ECF No. 13-11, PageID.1257–60. To remedy the issue, Ford developed an update to the vehicles' Battery Energy Control Module (BECM) software. *Id.*, PageID.1260. The updated software has "an enhanced capability to detect cell anomalies indicative of separator damage" and will provide advanced warning to owners of any such anomaly. *Id.* If an anomaly is detected, dealers are to replace the vehicle's high voltage battery pack at no charge. *Id.*

While that process was underway, Ford received four additional field reports describing high voltage battery thermal venting of vehicles in the affected population, including one that progressed to a vehicle fire. ECF No. 13-12, PageID.1262. As a result, Ford updated its customer guidance, instructing that they should not plug in the vehicles to charge the high voltage battery until the new software was installed. *Id.*; *see also* ECF No. 13-13, PageID.1267. Samsung issued a recall of the same batteries. *See* ECF 13-21.

## II.  **Plaintiffs claim they overpaid for their vehicles.**

The plaintiffs—13 individuals from 11 states—purchased new and used 2022-2023 Ford Escape and 2021-2023 Lincoln Corsair PHEVs from independent dealers in their home states and other states:[2]

| Plaintiff | Home State | Vehicle | Purchase Date | Purchase State | ACAC Paragraphs[3] |
|---|---|---|---|---|---|
| Steuck | CA | '22 Escape | 12/2/23 | CA | 14–17 |
| Chronicle | CA | '22 Corsair | Aug. 2022 | CA | 18–21 |
| Berardi | FL | '22 Corsair | 1/6/22 | GA | 22–25 |
| Woodcock | TX | '22 Escape | 10/16/24 | KS | 26–28 |
| Travers | MA | '22 Escape | 3/15/22 | MA | 29–31 |
| Hilburg | MO | '22 Escape | 5/25/22 | MO | 32–34 |
| Vasquez | MI | '23 Corsair | 6/29/23 | MI | 35–38 |
| Muller | NY | '23 Escape | 4/17/23 | NY | 39–42 |
| Schwedelson | NY | '23 Corsair | May 2023 | NY | 43–45 |
| Kerr | OH | '21 Corsair | 12/21/23 | IN | 46–48 |
| Friedland | TN | '22 Escape | 4/29/22 | TN | 49–51 |
| Bigelow | WA | '22 Corsair | 1/13/22 | WA | 52–55 |
| Simmons | WI | '22 Corsair | 9/9/22 | WI | 56–58 |

All plaintiffs except Friedland allege that they presented their vehicles for, and received, the recall remedy in May, June, or July 2025. ECF No. 13 at ¶¶ 16, 20, 24, 28, 31, 34, 37, 41, 45, 48, 54, 58, PageID.652–86. Friedland alleges she is "in the process of obtaining" the recall remedy. *Id.* ¶ 51, PageID.680–81.

---

[2]   Berardi and Kerr assert claims under the laws of their home states rather than the states of purchase. Ford responds to the claims as pled but expressly reserves the right to argue that these plaintiffs have brought those claims under inapplicable law.

[3]   ECF No. 13, PageID.651–86.

5

In general, plaintiffs allege that, though they continue to drive their vehicles and allow their family to ride with them, they are concerned about driving and parking near structures and other vehicles based on the battery issues announced in Recall No. 24V-954. *E.g.*, *id.* ¶ 16, PageID.652–53. They allege that, for a few months they were unable to charge their PHEVs by plugging them in and as a result had to pay for additional gasoline. *E.g.*, *id.* ¶¶ 15–16, PageID.652–53. They allege they would not have purchased their vehicles, would have paid less for those vehicles, or would have purchased non-plug-in-hybrid versions had they known about the battery manufacturing issue. *E.g.*, *id.* ¶ 17, PageID.653–54.

On these allegations, they claim that Ford is liable for fraudulent concealment/omission, unjust enrichment, violations of various state consumer protection statutes, breach of the implied warranty of merchantability, and violation of the Magnuson-Moss Warranty Act. *E.g.*, *id.* ¶¶ 168–964, PageID.734–924. They seek to represent state-specific subclasses as well as a nationwide class under the MMWA. *Id.* at ¶ 158, PageID.729–31.

In addition, Hilburg and Simmons were already named plaintiffs suing Ford in another putative class action, asserting the same fraud, consumer protection, and warranty claims, and seeking overpayment damages regarding the same vehicles. *See Pacheco, et al. v. Ford Motor Company,* No. 2:22-cv-11927, ECF No. 45, PageID.1780–81, 1794–96. The only difference is the nature of the alleged defect:

6

There, they complain of a manufacturing defect in the vehicles' connecting rod bearings. *See id.*

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "well-pleaded factual allegations" are accepted as true for purposes of determining whether the complaint states a plausible claim for relief, a court should not accept "legal conclusion[s] couched as [] factual allegation[s]." *Id.* at 678–79. For claims sounding in fraud—including under consumer protection statutes—allegations must meet the heightened pleading requirements of Rule 9(b). *William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*, 677 F. App'x 979, 982–83 (6th Cir. 2017). This requires pleading each fraud element with particularity, though knowledge need only be pled generally. *Republic Bank & Trust Co. v. Bear Stearns & Co..*, 683 F.3d 239, 248 n.2, 255–56 (6th Cir. 2012); *Tapply v. Whirlpool Corp.*, __ F.4th __, 2025 WL 2237654, at *4 (6th Cir. Aug. 6, 2025). "The point of Civil Rule 9(b) is to prevent, not facilitate, casual allegations of fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024).

---

[4]   Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

## **ARGUMENT**

### I.   **Hilburg and Simmons have impermissibly split their claims.**

The Court should first dismiss Hilburg's and Simmons's claims across the board because they are attempts to recover twice for the same claims against Ford. Courts prohibit "claim-splitting" and "duplicative litigation," which are variants of res judicata. *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019). In general, res judicata (sometimes known as claim preclusion) "bars subsequent litigation of causes of action where a court has already issued a final decision on the merits in an earlier case and the causes of action were, or should have been, litigated in the earlier case between the same parties." *Id.*; *see also Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) ("[C]laim splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation."). "Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Waad*, 762 F. App'x at 260.

The claim splitting doctrine "prevents a plaintiff from 'splitting a cause of action' into separate lawsuits and requires him to litigate all the claims he can raise in one case." *Prewett v. Weems*, 749 F.3d 454, 462 (6th Cir. 2014).[5] "In a similar

---

[5]   *See also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) ("[A] plaintiff must join all claims arising from the same set of facts in a single proceeding

vein, the doctrine of duplicative litigation allows a district court to stay or dismiss a suit that is duplicative of another federal court suit using its general power to administer its docket." *Waad*, 762 F. App'x at 260. This doctrine is "meant to protect parties from the vexation of concurrent litigation over the same subject matter." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).

Together, these principles preclude a plaintiff from maintaining "two actions on the same subject in the same court, against the same defendant at the same time." *Twaddle v. Diem*, 200 F. App'x 435, 438 (6th Cir. 2006); *see also Missouri v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time."). Where a plaintiff files two such actions, "dismissal of the second suit is a common disposition." *Twaddle*, 200 F. App'x at 438–39; *see also Katz*, 655 F.3d at 1219 (affirming dismissal for claim splitting because the plaintiff had "filed two cases in the same district court, involving the same subject matter, seeking the same claims for relief against the same defendants").

Hilburg and Simmons have done exactly what these rules prohibit—they have filed two separate cases for the same claims arising out of the same transaction or

---

and cannot split them across multiple fora."); *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) ("[B]y bringing two different suits which present two different theories of the case arising from the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage.").

9

occurrence. In *Pacheco*, they claim overpayment for the same vehicles they sue on here, asserting claims based on fraud, consumer protection statutes, and breach of warranty and seeking to represent substantially overlapping classes. No. 2:22-cv-11927, ECF No. 45, PageID.1780–81, 1794–96, 1842–43, 1847–57, 1884–90, 1924–30. The only difference is the theory of defect: There, a risk that a connecting rod bearing in their engines could fail, cause a "block breach," and possibly stall or cause a fire. *Id.* at ¶ 25, PageID.1760–61. But this distinction lacks legal significance because it is only an additional theory of liability arising from the same transaction or occurrence (the purchase of their vehicles) and alleging the same injury (overpayment). Therefore, Hilburg's and Simmons's improperly split claims should be dismissed.

## II. <u>The fraud-based claims should be dismissed.</u>

Plaintiffs' fraud-based claims (Counts 2–6, 9–11, 14–16, 19–21, 24–26, 29–31, 34–37, 40–43, 46–48, 50–52, and 55–57) fail for several reasons. First, all of the fraud-based claims, whether brought under common law "fraudulent omission" or "fraudulent concealment" theories or under state consumer protection statutes, lack factual allegations sufficient to create a plausible inference that Ford knew at the time of sale all that: 1) some class vehicles (approximately 1%) had batteries with a manufacturing defect; 2) that could result in internal battery separator damage; 3) that could create a risk of thermal venting; and 4) which would subsequently require

10

a recall. In addition, most plaintiffs' fraud claims are barred by the economic-loss rule and some plaintiffs' consumer protection claims are precluded by the very statutes they sue under.

### A.   <u>**Plaintiffs do not plausibly allege pre-sale knowledge of any defect.**</u>

A plaintiff claiming fraudulent concealment "must allege sufficient facts to show [the manufacturer] plausibly knew" of the alleged defect. *See Tapply*, 2025 WL 2237654, at *5; *see also Smith v. Gen. Motors LLC*, 988 F.3d 873, 886 (6th Cir. 2021) (plaintiffs must allege "facts showing the manufacturer's knowledge of the defect that it allegedly fraudulently concealed").[6] Consumer-protection claims based on alleged fraudulent or deceptive conduct likewise require allegations that the seller omitted a known fact or made an affirmative statement it knew to be untrue. *See, e.g., Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *3 n.5 (E.D. Mich. Jan. 4, 2019) ("[E]ach state consumer protection act . . . requires knowledge of the defect

---

[6]   Each state requires presale knowledge of a defect to state a fraudulent concealment or omission claim. *See Top Priority Transit, LLC v. Cape Auto Pool, Inc.*, 680 S.W.3d 536, 544 (Mo. Ct. App. 2023); *Lopez v. Clarke*, 189 So. 3d 805, 809 (Fla. Dist. Ct. App. 2015); *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1185–86 (2014), *as modified on denial of reh'g* (Aug. 13, 2014); *Ozelkan v. Tyree Bros. Env't Servs.,* 815 N.Y.S.2d 265, 267 (2d Dep't 2006); *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 372 (Tenn. Ct. App. 2006); *Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 265–66 (Wash. Ct. App. 2005); *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005); *Kestrel Holdings I, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1078 (D. Kan. 2004); *Martin v. Ohio State Univ. Found.*, 742 N.E.2d 1198, 1206 (Ohio Ct. App. 2000); *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998); *Slaney v. Westwood Auto, Inc.,* 322 N.E.2d 768, 779 (Mass. 1975).

by the defendant, or at least that the defendant should have known of the defect through reasonable inquiry.") (collecting cases detailing all relevant state laws except Kansas's and Washington's); *Burbo v. Harley C. Douglass, Inc.*, 106 P.3d 258, 267 (Wash. Ct. App. 2005) (requiring proof of "prior knowledge of concealed facts" to recover under Washington Consumer Protection Act); *Waggener v. Seever Sys., Inc.*, 664 P.2d 813, 820 (Kan. 1983) (no liability under Kansas Consumer Protection Act where seller did not have knowledge of allegedly misrepresented information).

Plaintiffs contend Ford had presale knowledge of the existence of a manufacturing defect in approximately 1% of the battery population years earlier, from four different sources: (1) "well-documented risks of thermal runaway and fires in lithium-ion batteries"; (2) "NHTSA warnings of safety risks for lithium-ion batteries and design considerations for reducing such risks"; (3) "the rigorous pre-sale testing Ford did or should have done on the high-voltage batteries and hybrid-electric propulsion system"; and (4) "similar fire risk issues and recalls with high-voltage lithium-ion batteries like those in" plaintiffs' vehicles. ECF No. 13 at ¶ 100, PageID.709. But, as explained below, none of these sources suffices to plausibly allege presale knowledge of the defect on which plaintiffs bring this case.[7]

---

[7]   Plaintiffs also make a subtle and problematic shift when they reach the pleading of their specific causes of action. They purport to anchor knowledge and a duty to

12

### 1. General historical information does not support pre-sale knowledge of a specific alleged defect.

Plaintiffs first contend that Ford knew about the alleged battery defect through "well-documented risks of thermal runaway and fires in lithium-ion batteries." ECF No. 13 at ¶ 100, PageID.709. They point to sources cited within an October 2017 NHTSA paper, *see id.* at ¶ 106, PageID.711, that discuss considerations associated with lithium-ion batteries generally. For example, the NHTSA paper cites prior studies for the propositions that "thermal runaway is most likely to be realized when an event occurs that results in rapid heating of the cell that outpaces the rate of heat dissipation in the cell," that "the key parameters to controlling thermal runaway are limiting the rate of heat generation and ensuring that the rate of heat removal exceeds the rate of heat generation," and also that "even if the charging/discharging and thermal management controls are functioning properly, the rate of heat generation could be such that the controls cannot react quickly or adequately enough to dissipate the heat." ECF No. 13-2, PageID.981–82. The paper also observes that, though "[c]onditions outside of the normal design parameters, unplanned 'catastrophic effects,' or improper manufacturing techniques are factors that could lead to cell

---

disclose, not just in the foregoing bases, but also in Ford's receipt of unidentified "customer complaints" that are mentioned dozens of times in the counts. *E.g.*, ECF No. 13 at ¶ 193, PageID.741. But the factual allegations of the ACAC say nothing about such supposed complaints, much less detail what supposedly was communicated, so they cannot be considered as sources of pre-sale knowledge.

13

failure," "[w]hen the cell and battery are operated within their designated charge and discharge regimes, and remain within appropriate ambient temperature ranges, the risk of cell failure is minimized." *Id.*, PageID.1000–01.

But general risks of lithium-ion batteries are hardly a secret. To the contrary, the possibility of fires associated with lithium-ion batteries has been widely publicized even outside scientific and engineering circles for years. Indeed, lithium-ion battery defect litigation had been going on in this very district for at least two years before ***any*** of the plaintiffs here purchased their vehicles.[8] *See In re Chevrolet Bolt EV Battery Litig.*, No. 20-cv-13256, ECF No. 1 (E.D. Mich. Dec. 11, 2020). Meanwhile, whatever general knowledge plaintiffs seek to impute to Ford based on the sources cited in the 2017 NHTSA report would likewise be imputed to the rest of the industry and to plaintiffs themselves for the same reason they say Ford should

---

[8] The ubiquity with which class action plaintiffs have pursued claims arising from lithium-ion battery recalls exposes a further problem beyond supposed ignorance of even the possibility of battery failure or fire risk: Plaintiffs claim injury based on diminished vehicle value. *E.g.*, ECF No. 13 at ¶ 74, PageID.696. But, according to cases in just this district alone, lithium-ion battery recalls have affected: Jeep's Wrangler and Grand Cherokee; Audi's Q5 and A7; Ford's Kuga, Fusion, and Escape; Lincoln's Corsair; Chevrolet's Bolt and Volt; and Chrysler's Pacifica. *See*, *e.g.*, *In re Chevrolet Bolt EV Battery Litig.*, No. 2:20-cv-13256, ECF No. 1; *In re Chrysler Pacifica Fire Recall Products Liab. Litig.*, No. 22-md-03040, ECF No. 1; *Miller v. Gen. Motors, LLC*, No 2:22-cv-12739, ECF No. 1. When substantially every electric vehicle has had battery recalls from time to time (just like substantially every non-electric vehicle has had engine recalls from time to time), cries of diminished resale value merely because of a recall are also implausible.

have known: Those sources were publicly available to them well before the 2017

NHTSA report aggregated them—again, in a public release—many years before any

of them bought their vehicles. The availability of that information precludes a claim

for fraud. *See e.g., Richards v. ABN AMRO Mortg. Grp., Inc.*, 261 S.W.3d 603, 607

(Mo. Ct. App. 2008) ("A plaintiff asserting fraud must show that the undisclosed

information was beyond her reasonable reach.").[9]

In any event, "[g]eneral awareness in the automotive industry that lithium-ion

batteries may pose a fire risk is not enough to establish knowledge of a defect." *In*

*re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 956 (E.D. Mich. 2022).

What plaintiffs need to make their claim plausible—but fail to provide—is a basis

to infer that any of those historical materials put Ford on notice that ***the batteries***

***used in these vehicles*** were subject to an isolated manufacturing defect. But

plaintiffs allege no such thing, which is hardly surprising since historical materials

of general application would be very unlikely to discuss manufacturing issues that a

---

[9]  *See also, e.g.*, *DBD Kazoo LLC v. W. Michigan LLC*, No. 361299, 2024 WL 500208, at *8 (Mich. Ct. App. Feb. 8, 2024), *appeal denied*, 16 N.W.3d 730 (Mich. 2025); *Pacella v. RSA Consultants, Inc.*, 83 N.Y.S.3d 630, 634 (2d Dep't 2018); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (California law); *In re Marriage of Wilson*, 223 P.3d 815, 822 (Kan. Ct. App. 2010); *Est. of Morris v. Morris*, 329 S.W.3d 779, 784 (Tenn. Ct. App. 2009); *Aug. v. U.S. Bancorp*, 190 P.3d 86, 96 (Wash. Ct. App. 2008), *as amended* (Sept. 4, 2008); *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 213 (Wis. 2005); *David v. Davenport*, 656 So. 2d 952, 953 (Fla. 3d DCA 1995); *Miller v. South*, 174 N.E.2d 140, 141 (Ohio Ct. App. 1960).

particular manufacturer would experience a decade or more in the future.

### 2. The 2017 NHTSA report itself does not support pre-sale knowledge of a specific alleged defect.

Plaintiffs next move past the historical studies in the 2017 NHTSA report to say that paper, itself, provides a separate source of pre-sale knowledge: "NHTSA warnings of safety risks for lithium-ion batteries and design considerations for reducing such risks." ECF No. 13 at ¶ 100, PageID.709. These allegations fail for the same reason discussed above—(1) these "NHTSA warnings" did not provide knowledge to Ford of a manufacturing defect in the specific batteries used years later in the vehicles at issue here, and (2) any knowledge gleaned from these publicly available warnings was equally available to plaintiffs.

The cited "NHTSA warnings" fail to plausibly show pre-sale knowledge for at least one additional reason: They relate to battery *design* and cannot support plaintiffs' attempt to impute from them pre-sale knowledge of the *manufacturing* issue here. Specifically, plaintiffs contend that the NHTSA report:

- "recommended rigorous design and testing protocols to protect against [the cited] risks," *id.* at ¶ 107, PageID.711;

- noted that "the thermal and mechanical design of a cell strongly influences its ability to control and dissipate heat, thereby influencing its safety performance," *id.* at ¶ 110, PageID.713;

- discussed that "this increased capacity of these large format [prismatic] cells [designed for automotive applications] requires the protective devices to be designed and scaled accordingly," *id.* at ¶ 119, PageID.716;

16

- recommended having "sophisticated controls and safety monitoring features in lithium-ion battery systems," *id.* at ¶ 123, PageID.717; and

- proposed "appropriate safety measures to prevent thermal runaway at the cellular level" and thermal management and other safety features at the modular level, *id.* at ¶¶ 126–29, PageID.718–19.

Plaintiffs also conclude that, given the report, "it is unclear how the risk of fire will be resolved if the battery pack is not redesigned and replaced entirely." *Id.* at ¶ 117, PageID.715. But, as pled, the alleged defect here—premised on issues identified as part of Recall No. 24V-954—is not one of design. Although plaintiffs cite the 2017 NHTSA report for the proposition that large format cells require "strong safety measures" and "rigorous testing," *see id.* at ¶¶ 119–21, PageID.716, they do not allege any actual defect in the batteries' design. Instead, they rely entirely on Ford's and Samsung's recall filings for the technical basis of their claims. *See id.* at ¶ 85, PageID.704. Those filings, in turn, describe "damage as a result of the manufacturing process" and say that the "high voltage cell's separator layer between its cathode and anode may be susceptible to damage ***as a result of the cell manufacturing process***." *See* ECF No. 13-11, PageID.1258; ECF No. 13-13, PageID.1265. Relatedly, plaintiffs do not even purport to allege the batteries were manufactured to specification and are performing as designed. To the contrary, they ultimately admit they do not (and cannot) even "know the precise design of the high-voltage batteries and the methods used or not used in the architecture and testing of the high-voltage batteries." ECF No. 13 at ¶ 145, PageID.724.

17

At bottom, plaintiffs' assertions about the import of NHTSA's 2017 *design* guidance does nothing to show that Ford had pre-sale knowledge of the alleged *manufacturing* defect at issue here. And the fact that plaintiffs filed suit while admitting they have no idea what Ford did or did not do speaks volumes about the plausibility of their conclusory accusations.

### 3. Generic allegations about pre-sale testing do not support pre-sale knowledge of a specific alleged defect.

Plaintiffs next contend that Ford knew or should have known about the supposed battery defect based on "rigorous pre-sale testing" that it "did or should have done on the high-voltage batteries and hybrid-electric propulsion system." *Id.* at ¶ 100, PageID.709. To support that contention, plaintiffs announce that "any adequate testing . . . would have revealed the high-voltage batteries' propensity to fail and combust as the result of thermal runaway" and they speculate "on information and belief" that "[e]ither Ford followed these standards and testing protocols and discovered the risk, or it failed to follow these protocols and concealed these failures." *Id.* at ¶ 138, PageID.722.

These are nothing more than bald conclusions, unsupported by actual factual allegations, and so they need not—and cannot—be accepted as true at this stage. *See, e.g.*, *Iqbal*, 556 U.S. at 678–79. Further, allegations about pre-sale testing are "disfavored" to show a manufacturer's knowledge, particularly when unaccompanied by "detail about the actual test results." *Norman v. FCA US, LLC*,

696 F. Supp. 3d 359, 382-83 (E.D. Mich. 2023) .

Plaintiffs' layperson announcement that "any adequate testing . . . would have revealed" a problem, ECF No. 13 at ¶ 138, PageID.722, is wildly speculative. Plaintiffs do not identify a single test, a single result, or anything beyond their "information and belief" (which they attribute to no source whatsoever). To the contrary, they openly declare they have no idea what testing Ford did. *See id.* at ¶ 145, PageID.724. Under *Smith*, absent specific allegations that test results "revealed a safety defect," pre-sale testing cannot serve as a basis to allege an auto manufacturer's pre-sale knowledge. 998 F.3d at 885. And, to the extent *Tapply* sought to cabin *Smith*, it did so where the allegations at issue went beyond "mere 'information and belief'" and instead included "precise dates" and "contents" of complaints sent to the CPSC and from there to the manufacturer. *See Tapply*, 2025 WL 2237654, at *5. Plaintiffs' conclusory, "upon information and belief" allegations here are nothing like those in *Tapply*, and this Court should follow the guidance of *Smith* and the many cases that followed it and recognized that boilerplate references to "testing" do not make for plausible allegations of presale knowledge.

### 4. Reports of different battery issues do not support pre-sale knowledge of a specific alleged defect.

Finally, plaintiffs have not plausibly alleged pre-sale knowledge based on other "similar fire risk issues and recalls with high-voltage lithium-ion batteries like those in" plaintiffs' vehicles. *See* ECF No. 13 at ¶ 100, PageID.709. For this,

19

plaintiffs resort to various news articles about other recalls of other vehicles or other batteries. All of these attempts fail for the same reason: Plaintiffs fail to allege any of them involved the same batteries used in the vehicles at issue here, much less that those batteries had the same alleged defect. They instead boil down to an inadequate assertion that, because Ford knew *something* could go wrong with lithium-ion batteries made by Samsung (or even by other suppliers), Ford *knew* the batteries used here were defective. But that is classic, fallacious *post hoc ergo propter hoc* reasoning. *See Chevrolet Bolt*, 633 F. Supp. 3d at 957 (complaints insufficient where they "discuss *a* safety risk—losing power while driving—but not the *specific* risk alleged by the Plaintiffs here").

2020 Ford Kuga and BMW Recall. Plaintiffs point to this August 2020 recall issued "because the [Samsung] battery production process allowed impurities to enter the cells." ECF No. 13 at ¶ 141, PageID.722–23. In addition to failing to allege the battery used in those vehicles was the same or even of similar design as the battery used here, plaintiffs also extensively discuss the root cause here as being damage to the separator layer in the battery cells—not the presence of "impurities" as described in the article they rely on. *See, e.g.*, *id.* at ¶¶ 85, 97, 114–116, PageID.704, 708, 714–15. So the 2020 recalls are a prototypical red herring.

March 2022 Samsung Recall. Plaintiffs next point to March 2022, when "Samsung recalled more than 1,100 of its high-voltage batteries . . . because of poor

manufacturing quality." *Id.* at ¶ 142, PageID.732. Here, again, plaintiffs fail to allege any similarity between the batteries at issue. And, here again, they try to imply a connection between facially unrelated issues—this time by insinuating that a problem involving a "sudden loss of driving power," *see* ECF No. 13-29, PageID.1430, says something about a risk of thermal runaway and fire.

June 2023 Panasonic Battery Recall. Next up is Ford's June 2023 recall of other vehicle models for a battery defect that "could cause excess voltage and current flow to the battery engine control module, damaging the component, and potentially resulting in loss of power and fire." ECF No. 13 at ¶ 143, PageID.723. Yet again, plaintiffs fail to allege that the batteries are the same, and the defect description is unrelated. Worse, they cite Recall No. 23V-440, *see id.* at n. 80, PageID.723, but leave out that it involved batteries made by Panasonic, a different manufacturer entirely.[10]

Other Automakers' Recalls Starting in November 2023. Finally, plaintiffs point to November 2023, when "two other manufacturers that used the same or similar high-voltage lithium-ion batteries as those in [plaintiffs' vehicles] began recalling their vehicles for separator damage." *Id.* at ¶ 140, PageID.722. But, as

---

[10] *See* https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V440-8382.PDF. The Court could take judicial notice of this government filing even if Plaintiffs had not opened the door by relying on this recall generally.

plaintiffs' own exhibits demonstrate, "each product's final design differs and is based upon, among other things, the respective specifications and requirements of each OEM for their respective vehicles." ECF No. 13-21, PageID.1376. Plausibility is undoubtedly less demanding than particularity; but it does not entitled plaintiffs to an inference of *knowledge* of a defect based on a recall for a similar-but-different component, at least in the absence of reports of similar problems in Ford vehicles. But plaintiffs lack those, too: The earliest reports they point to in Ford vehicles are from April to August 2024, which came to the attention of Ford's Critical Concern Review Group in September 2024. ECF No. 13 at ¶ 87, PageID.705; ECF No. 13-11, PageID.1259.

*   *   *

The net result of all this is that none of the sources plaintiffs rely on suffice to establish presale knowledge. Ford's investigation began in September 2024 and the very last plaintiff to purchase his vehicle—Woodcock—did so only about a month later. *See* ECF No. 13 at ¶¶14-59, PageID.651–86 (Woodcock purchased October 16, 2024; all others purchased in 2022 or 2023). But "the opening of an . . . investigation does not, in itself, indicate that a 'defect' has been identified." *Xu v. Porsche Cars N. Am., Inc.*, 655 F. Supp. 3d 1214, 1232 (N.D. Ga. 2023). Indeed, "[t]o impute knowledge of a defect . . . within weeks after an internal investigation was opened—based only the fact of the investigation—would not only make little

22

sense, but it might well discourage manufacturers from conducting such investigations in the first place." *Id.* And, while the foregoing discussion shows why other companies having issued recalls "starting" in November 2023 does not create a reasonable inference of knowledge, even that event only predates two other plaintiffs' purchases. *See id.* (Steuck and Kerr purchased in December 2023). Meanwhile, plaintiffs' contention that other recalls about different batteries demonstrating different symptoms somehow created knowledge of ***this specific problem*** is entitled to no credence whatsoever. In short, plaintiffs have failed to plausibly plead presale knowledge.

Given its recency, plaintiffs will likely argue that their allegations nevertheless suffice under *Tapply*, which reemphasized that knowledge may be pled generally and sought to distinguish in some respects the prior published decision in *Smith*. 2025 WL 2237654, at *4. But *Tapply* also reinforced that, "although plaintiffs need not allege . . . knowledge with particularity, they nevertheless must allege sufficient facts to show [the manufacturer] plausibly knew of the Defect." *Id.* at *5. And this case presents none of the factors that motivated a conclusion of sufficient pleading there: In *Tapply*, the alleged defect was the design of Whirlpool ranges that all had front-mounted knobs allegedly susceptible to accidental actuation. *Id.* at *1. The plaintiffs there cited numerous complaints, both to the Consumer Product Safety Commission and on Whirlpool's website, complaining of accidental actuation from

23

the design of the knobs. *Id.* at *2. Each report discussed "the Defect and the date the consumer's incident occurred." *Id.* And, importantly, the plaintiffs "pleaded actual knowledge arising from direct governmental communication made pursuant to federal law," as opposed to mere constructive knowledge. *Id.* at *5.

Here, plaintiffs offer only the kind of generic pleading that fails under both *Smith* and *Tapply*: Assertions upon information and belief about what Ford supposedly knew or could have concluded from unrelated problems in different products, and nothing like direct governmental communication mandated by law.

At bottom, plaintiffs' fraud-based claims are really strict-liability claims in disguise: Because studies emphasize the need for safety protocols and testing with lithium-ion batteries, and because Ford had a handful of thermal venting events, plaintiffs conclude Ford must have failed to do that testing or lied about it, and is therefore liable. But even that theory is a sham because, as plaintiffs also plead, such testing can "reduce" and "mitigate thermal runaway risk"—which is far different from eliminating it entirely. *See* ECF No. 13 at ¶¶ 123, 128, PageID.717, 719. Failure to achieve perfection is not fraud.

### B. Most plaintiffs' fraudulent omission/concealment claims are barred by the economic-loss rule.

Nearly all plaintiffs' fraudulent omission and concealment claims would be barred by the economic-loss rule even if they had been adequately pled. The economic loss rule "precludes recovery in tort for economic losses resulting from

the failure of a product to live up to a contracting party's expectations." *Tietsworth v. Harley–Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004). California, Florida, Kansas, Michigan, Missouri, New York, Tennessee, and Wisconsin all apply the economic-loss rule to fraud claims where those claims are intertwined with contractual (e.g., warranty) obligations. *See Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020) ("Plaintiffs' fraudulent omission claim is barred by the economic loss rule."); *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013) (rule prohibits torts where "the only damages suffered are economic losses"); *Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597, 621–624 (Kan. Ct. App. 2011) (affirming dismissal of fraud-in-the-inducement claim where it duplicated a breach of contract claim); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995) (applying economic loss "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold"); *Nestle Purina Petcare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 639 (E.D. Mo. 2016) ("[T]he economic loss doctrine bars the fraud claims because they are 'substantially redundant' with warranty claims."); *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 226 (S.D.N.Y. 2001) (fraud claim barred by economic loss rule because plaintiff was "attempting solely to recover for the alleged loss of the benefit of his bargain; a remedy confined to a cause of action sounding in contract and not in tort"); *Milan*

25

*Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 153–54 (Tenn. 2021) ("[T]he economic loss doctrine applies if the only misrepresentations by the dishonest party concern the quality or character of the goods sold . . . when a party is merely suing to recover the benefit of its contractual bargain, there is no inherent unfairness in limiting that party to a breach-of-contract claim"); *Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 654 (Wis. 2003) ("the economic loss doctrine acts as a bar where the fraud in the inducement is interwoven with the contract.").

In their fraudulent concealment/omission claims, plaintiffs seek only economic loss here arising from their contention that they did not receive the benefit of their bargain. *E.g.*, ECF No. 13 at ¶¶ 516, 525, 932, 940, PageID.815, 818, 916, 919; *see also e.g.*, *id.* at ¶ 160, PageID.731 (excluding from the class definition "any personal injury or property damages claims"). Accordingly, the economic loss rule bars Steuck, Chronicle, Berardi, Woodcock, Vasquez, Hilburg, Muller, Schwedelson, Friedland, and Simmons's fraudulent concealment and omission claims.

### C. Several plaintiffs' state-law consumer protection claims fail for other reasons.

#### 1. Class claims are not permitted under the consumer protection statutes in Kansas, Ohio, and Tennessee.

Woodcock's and Friedland's class claims for money damages under the Kansas Consumer Protection Act (Count 14) and the Tennessee Consumer

26

Protection Act (Count 46) fail because those statutes bar class-action claims for money damages. *See Hammer v. Sam's East, Inc.,* 2013 WL 3756573, at \*3 n. 6 (D. Kan. July 16, 2013) ("Kan. Stat. Ann. §§ 50-634(b)-(c) prohibit recovery of damages in a class action"); Tenn. Code § 47-18-109 (a)(1); *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 311 (Tenn. 2008) (TCPA precludes class actions).

Kerr's class claim under the Ohio Consumer Sales Protection Act (OCSPA) (Count 40) also fails because that statute precludes class actions except for specific conduct previously deemed a violation under an Ohio Attorney General rule or state court proceeding. *See In re Porsche Cars N. Am., Inc.,* 880 F. Supp. 2d 801, 867–70 (S.D. Ohio 2012) (citing Ohio Rev. Code § 1345.09(B)). Kerr fails to plead any such predicate Ohio Attorney General rule or court decision.

### 2. The Michigan Consumer Protection Act exempts motor vehicle sales.

Vasquez's claim under the Michigan Consumer Protection Act (Count 29) fails because motor vehicle sales are exempt from the MCPA as being "specifically authorized under" the Michigan Vehicle code. *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 719 (E.D. Mich. 2021) (collecting cases and citing *Jimenez v. Ford Motor Credit Co.,* 2015 WL 9318913, at \*7 (Mich. Ct. App. Dec. 22, 2015)).

## III. The implied warranty claims fail.

### A. Plaintiffs' vehicles are fit for their ordinary purpose of transportation.

To state a plausible claim for breach of the implied warranty of

merchantability as to an automobile, a plaintiff must allege that his vehicle cannot provide basic transportation in a safe manner. *See, e.g.*, *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 761–62 (E.D. Mich. 2017). "Merchantable is not a synonym for perfect." *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016). Goods must be "fit for the ordinary purposes for which such goods are used." Mo. Stat. § 400.2-314(2)(c).[11] That is, the "goods need only be of average quality within the industry." *Montgomery*, 822 F.3d at 309. "With regard to automobiles, the implied warranty of merchantability can only be breached when the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135, 1148 (W.D. Mo. 2021); *see also, e.g.*, *Jackson v. Eddy's LI RV Ctr., Inc.,* 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012); *Am. Suzuki Motor Corp. v. Superior Court,* 44 Cal. Rptr. 2d 526, 529–530 (2d Dist. 1995); *Taterka v. Ford Motor Co.*, 271 N.W.2d 653, 655 (Wis. 1978).

Plaintiffs cannot plausibly allege a claim for breach of the implied warranty of merchantability because their vehicles are and have been fit for their ordinary

---

[11]  *Accord* Cal. Civ. Code § 1791.1(a)(2); Fla. Stat. § 672.314(2)(c); Kan. Stat. § 84-2-314(2)(c); Mass. Gen. Laws ch. 106, § 2–314(2)(c); MCL § 440.2314(2)(c); N.Y. U.C.C. Law § 2-314(2)(c); Ohio Rev. Code § 1302.27(B)(3); Wash. Rev. Code § 62A.2-314(2)(c).

purpose of providing transportation.[12] Plaintiffs and their families have used and are still using their vehicles for transportation. ECF No. 13 at ¶¶ 14, 18, 22, 29, 32, 35, 39, 43, 46, 49, 52, 54, 56, PageID.651–52, 654–55, 657–58, 662–63, 665–66, 668–71, 673–74, 676–79, 681–85. That forecloses an assertion of unfitness for use, generally. *See Beck,* 273 F. Supp. 3d at 762 (dismissing implied warranty claims where there was "no indication . . . that, despite the safety concerns, he has actually stopped driving his vehicle").

Plaintiffs' contentions that their vehicles did not perform as ***plug-in*** hybrid vehicles for a period of time, *e.g.*, ECF No. 13 at ¶ 543, PageID.822, does not change this conclusion. "The implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality*." *See Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011); *see also Montgomery*, 822 F.3d at 309. To accept a temporary disruption as stating a claim of unmerchantability would throw open the floodgates to all manner of transitory inconveniences. Just as plaintiffs here purchased their vehicles in part based on the plug-in feature, other purchasers may

---

[12] Plaintiffs' allegations fail even under some courts' interpretation that "merchantability . . . encompass[es] a broader fitness for use than capable of being driven," because they still fall short of alleging facts showing that the mere fact that their vehicles have been recalled (and now repaired) affects their vehicles' "driveability, safety, and usefulness." *See Norman*, 696 F. Supp. 3d at 379, *cf. id.* at 369–70 (detailing objective issues including "mold," "foul odor," and "electrical issues" that actually manifested in each named plaintiff's vehicle).

29

similarly value—and pay a premium for adaptive cruise control, blind-spot monitoring, infotainment, or even air conditioning. If the inability to use such a feature for a time *while a repair is being developed* amounts to a warranty breach, then the concept of merchantability quickly collapses into strict liability for any non-trivial component failure.

Counts 7, 12, 17, 22, 27, 32, 38, 44, and 53 should be dismissed.

### B.      Most plaintiffs lack privity with Ford.

Because all plaintiffs purchased their vehicles from independent sellers and not directly from Ford (*see* ECF No. 13 at ¶¶ 14, 18, 22, 26, 29, 32, 35, 43, 46, 49, 52, 56, PageID.651, 654, 657, 659–60, 662, 665, 668, 673, 676, 678–79, 681, 684), they cannot allege sufficient privity with Ford, which is required for breach of implied warranty of merchantability claims under the laws of California, Florida, Kansas, New York, Ohio, and Washington (Counts 7, 12, 17, 38, 44, and 53). *See Shamamyan v. FCA US LLC*, 2020 WL 3643481, at *6 (C.D. Cal. Apr. 1, 2020); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019); *Aracena v. BMW of N. Am., LLC,* 159 A.D.3d 664, 666 (N.Y. App. Div. 2d Dep't 2018); *Curl v. Volkswagen of Am., Inc.,* 871 N.E.2d 1141, 1147 (Ohio 2007); *Pro. Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 898–99 (Kan. 1984); *Baughn v. Honda Motor Co.,* 727 P.2d 655, 668–69 (Wash. 1986).

Plaintiffs' conclusory attempts to plead around privity are ineffective. First,

they claim that certain plaintiffs "had sufficient direct dealings with Ford, its authorized dealers, and its agents to establish privity of contract with Ford." ECF No. 13, ¶¶ 335, 544, 689, 766, 891, PageID.774, 822, 858, 878, 907. But even if the states where they claim the exception (Florida, Missouri, New York, Ohio, and Washington) accepted the direct dealings exception (most expressly don't), more than plaintiffs' conclusory allegation is necessary for them to benefit from it. *See, e.g.*, *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 622 (N.D. Ohio 2016) (noting Ohio's rejection of the "direct dealings" exception); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1223 (S.D. Fla. 2017) (rejecting plaintiffs' allegations that "they have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract" as a legal conclusion unsupported by sufficient factual allegations); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 628–29 (Wash. 2003) (strictly requiring privity between buyer and remote manufacturer); *Lexow & Jenkins, P.C. v. Hertz Com. Leasing Corp.*, 504 N.Y.S.2d 192, 194 (2d Dep't 1986) (rejecting claim of any "agency relationship that would establish privity between the plaintiff and" the remote manufacturer).

And putative third-party beneficiary status fails to absolve the privity requirement because the states where they allege that the status saves them (Florida, New York, Ohio, Washington, ECF No. 13 at ¶¶ 335, 689, 766, 891, PageID.774, 858, 878, 907) have expressly rejected it, especially in cases like this one asserting

31

only economic loss. *See, e.g.*, *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1305 (S.D. Fla. 2022) (restricting application of third-party beneficiary exception); *Traxler*, 158 F. Supp. 3d at 622 ("Ohio . . . has rejected the argument regarding third-party beneficiaries."); *Urb. Dev., Inc. v. Evergreen Bldg. Prods., LLC*, 59 P.3d 112, 118 (Wash. Ct. App. 2002), *as amended* (Jan. 17, 2003) (declining to apply third-party beneficiary exception to privity requirement because plaintiff had "no direct interactions" with the defendant-manufacturer, and the manufacturer did not design the product specifically for the plaintiff); *Hole v. Gen. Motors Corp.*, 442 N.Y.S.2d 638 (3d Dep't 1981) (allowing third-party beneficiary status to overcome lack of privity only in personal injury cases).

And the "dangerous instrumentalities exception" does not help them, ECF No. 13, ¶¶ 335, 406, 689, 766, 891, PageID.774, 790, 858, 878, 907, because Florida, Kansas, New York, and Ohio do not recognize such an exception for economic loss (versus personal injury) claims, and Washington does not recognize an automobile as an "inherently dangerous instrumentality." *See In re Evenflo Co., Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 707 F. Supp. 3d 103, 133 (D. Mass. 2023) (NY); *Kelly v. Rickey*, 166 Wash. App. 1010 (2012); *Koss Const. v. Caterpillar, Inc.*, 960 P.2d 255, 260–61 (Kan. Ct. App. 1998) (limiting inherently dangerous products exception to personal injury claims); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 85–86 (Fla. 1976) (discussing the inherently dangerous instrumentality exception to privity

in the context of claims for personal injury only); *Inglis v. Am. Motors Corp.*, 197 N.E.2d 921, 927 (Ohio Ct. App. 1964), *aff'd*, 209 N.E.2d 583 (Ohio 1965) (same).

The claims for breach of implied warranty asserted by Steuck, Chronicle, Berardi, Woodcock, Muller, Schwedelson, Kerr, and Bigelow (Counts 7, 12, 17, 38, 44, and 53) should be dismissed.

## IV. Plaintiffs' MMWA claims must be dismissed because their implied warranty claims fail.

Where plaintiffs "have failed to allege any viable warranty claims under the applicable states' laws, their MMWA claim fails." *Weidman v. Ford Motor Co.*, 2020 WL 674348, at \*5 (E.D. Mich. Feb. 11, 2020). Because the implied warranty claims asserted by most plaintiffs[13] fail under each state's laws, the MMWA claim (Count 1) also fails. *See Beck*, 273 F. Supp. 3d at 762.

## V. The unjust enrichment claims fail because an express contract covers the same subject matter.

"[C]ourts have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims." *Chevrolet Bolt*, 633 F. Supp. 3d at 982; *Hall v. Gen. Motors, LLC*, 2020 WL 1285636, at \*9 (E.D. Mich. Mar. 18, 2020).[14] Plaintiffs allege, and Ford does not dispute, that their vehicles were

---

[13] Friedland and Simmons do not allege any state-law warranty claim.

[14] *See also Scott v. Fields,* 92 A.D.3d 666, 669 (N.Y. App. Div. 2d Dep't 2012);

33

subject to Ford's New Vehicle Limited Warranty ("NVLW"). ECF No. 13 at ¶¶ 14, 18, 22, 26, 29, 32, 35, 39, 43, 46, 49, 52, 56, PageID.651, 654, 657, 660, 663, 665, 668, 671, 674, 676, 679, 681, 684. And, not only the NVLW but also Ford's Recall No. 24V-954 guarantee a remedy for the manufacturing issue here. As a result, plaintiffs' purported "alternative pleading" of Counts 8, 13, 18, 23, 28, 33, 39, 45, 49, 54, and 58 fail. *See In re Gen. Motors Air Conditioning Marketing & Sales Practices Litig.*, 406 F. Supp. 3d 618, 635 (E.D. Mich. 2019) (collecting cases explaining alternative pleading is not permitted when the parties "do not dispute the existence of the warranty") (cleaned up).

**VI.     Plaintiffs lack standing to pursue claims for a "nationwide" class.**

The Court should also dismiss (or strike) Count 1, for violation of the MMWA, for lack of standing to the extent plaintiffs purport to assert it as a "nationwide claim" brought on behalf of a "Nationwide Class." *See* ECF No. 13 at ¶¶ 158, 168–84, PageID.729, 734–38. Although courts in this district previously differed in their approaches to this issue, the Sixth Circuit has conclusively foreclosed such nationwide-class pleading. *See Norman,* 696 F. Supp. 3d at 373–75 (analyzing *Fox v. Saginaw Cnty.*, 67 F.4th 284 (6th Cir. 2023)). *Fox* held that "the issue of standing must be addressed at the motion-to-dismiss stage rather than at the

---

*Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Miller v. Gen. Motors, LLC,* 2018 WL 2740240, at *15 (E.D. Mich. June 7, 2018) (Washington); *Le v. Kohl's Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1116 (E.D. Wis. 2016).

class-certification stage" and, because "Plaintiffs lack standing to sue under the laws of states where they have not been injured," they "cannot proceed on behalf of a 'Nationwide Class.'" *Id.* at 375; *accord Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 493 (E.D. Mich. 2025). Count 1 must be dismissed—or stricken, under Rule 12(f)—to the extent it seeks to assert a "nationwide" MMWA claim.

## **CONCLUSION**

For the reasons set forth above, Ford requests that the Court dismiss all claims asserted in Plaintiffs' Amended Class Action Complaint.

Respectfully submitted,

*/s/ Roger P. Meyers*
Stephanie A. Douglas (P70272)
Roger P. Meyers (P73255)
Susan A. McKeever (P73533)
A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone/Fax: (248) 822-7800
douglas@bsplaw.com
meyers@bsplaw.com
mckeever@bsplaw.com
morrison@bsplaw.com

Dated August 29, 2025       *Attorneys for Ford Motor Company*

35